UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KEITH JEFFREY,

                              Plaintiff,

                                            9:09-CV-0327
v.                                             (NAM/GHL)

WALEED AHMED, CATHERINE WELLS,
JOHN MALY, GREG PALEN,

                              Defendants.
_____

APPEARANCES:                         OF COUNSEL:

KEITH JEFFREY, 97-A-1231
Plaintiff *pro se*
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York 12589

HON. ERIC T. SCHNEIDERMAN         JUSTIN C. LEVIN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## **ORDER and REPORT-RECOMMENDATION**

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Norman A. Mordue,

Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Currently pending before the Court is Defendants' motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56.  (Dkt. No. 39.)  Plaintiff has opposed the motion.[1]  (Dkt. No. 41.)  For the reasons discussed below, I recommend that Defendants' motion be granted in part and denied in part.

## I.     OUTSTANDING DISCOVERY ISSUES

On October 4, 2010, I issued an order granting in part and denying in part Plaintiff's motion to compel discovery.  (Dkt. No. 33.)  In that order I directed Defendants to make proposed redactions to three documents (the Meier Memorandum, the Genovese Memorandum, and the Burgos Transcript) in order to protect the identify of a confidential informant.  *Id*. at 7-9. Thereafter, Defendants submitted proposed redactions under seal.  I have reviewed the proposed redactions and find that none of the redacted information is relevant to Plaintiff's claims in this litigation.  Although I am hesitant to issue a Report-Recommendation  on the motion for summary judgment without Plaintiff first receiving the documents, I have reviewed the documents thoroughly and have considered every fact in them in the light most favorable to Plaintiff.  Facts from the documents are included in the statement of facts below.  I direct the Clerk to mail copies of the redacted documents to Plaintiff along with this Report-Recommendation so that Plaintiff may, if he wishes, cite the documents in any objections he files.

---

[1]     Although the opposition was not timely filed, the Court will consider it out of special solicitude to Plaintiff, who is proceeding *pro se*.  Plaintiff's letter motion (Dkt. No. 43) is therefore granted.

## II.      FACTUAL AND PROCEDURAL SUMMARY

Plaintiff Keith Jeffrey has been a paraplegic since 1994.  (Dkt. No. 1 at 7 ¶ 12[2]; Dkt. No. 39-4 at 40:16-25.[3])  Plaintiff can feel hot and cold in his upper back, but he loses sensation in the middle of his back and from there down he can feel only pressure, not temperature.  (Dkt. No. 39-4 at 39:19-40:15.)  He has been incarcerated at Shawangunk Correctional Facility since September 2005.  *Id*. at 13:23-14:4.  In late 2006, Plaintiff was referred to physical therapy because of pain below his right shoulder blade.  (Dkt. No. 39-4 at 14:20-15:8, 56:10-18.)  In physical therapy, Plaintiff would do leg stretches and a therapist would apply a hot pack to his back.  *Id* at 18:11-14.)

Before February 15, 2007, Plaintiff did not feel that hot packs were helping him and, as a result, he started refusing physical therapy.  *Id*. at 54:3-22.  Defendant Physical Therapist Waleed Ahmed "seemed to not like the fact" that Plaintiff did not want physical therapy.  *Id*. at 55:5-8. Other than that, there were no altercations or hostilities between Plaintiff and Defendant Ahmed before February 15, 2007.  *Id*. at 55:5-12.

On February 15, 2007, Plaintiff had an afternoon appointment with Defendant Ahmed. *Id*. at 22:20-23:22.  Defendant Ahmed applied a hot pack to Plaintiff's back.  *Id*. at 27:4-10.  The hot pack was rectangular and measured about fourteen inches long by about seven inches wide. *Id*. at 51:24-52:5.  Plaintiff testified that Defendant Ahmed wrapped it in a towel.  (Dkt. No. 39-4 at 33:9-17.  Defendant Ahmed declares that he also used a thick hot pad cover.  (Dkt. No. 39-5 ¶

---

[2]      Page numbers in citations to the complaint refer to the page numbers assigned by the Court's electronic filing system.

[3]      Page numbers in citations to Plaintiff's deposition refer to the page numbers assigned by the Court's electronic filing system.

13.)  The fact that Plaintiff does not have sensation in his middle and lower back is noted in his treatment records, but he cannot remember whether he ever personally told Defendant Ahmed of this.  (Dkt. No. 39-4 at 42:24-43:24.)  Defendant Ahmed declares that he checked Plaintiff's sensation, both superficial and deep, before applying the hot pack and found that it was intact. (Dkt. No. 39-5 ¶ 11.)  Defendant Ahmed applied the pack to Plaintiff while Plaintiff was still seated in his wheelchair.  (Dkt. No. 39-4 at 27:23-28:3.)  In order to keep the hot pack in place, Plaintiff had to lean back on it, which "put a little more pressure than it would normally be."  *Id*. at 30:23-31:7.  The hot pack was large and touched both the part of Plaintiff's back where he can sense hot and cold and the part where he cannot.  *Id*. at 42:11-17.  There were three other inmates[4] receiving physical therapy while Plaintiff was there.  *Id*. at 28:4-8.  The other inmates complained that their packs were too hot and Defendant Ahmed wrapped those packs in an additional towel.  *Id*. at 32:3-6.  Plaintiff did not complain about his pack.  *Id*.  Defendant Ahmed asked him if the hot pack was uncomfortable or too hot and Plaintiff "indicated that he had sensation in the area and that the hot pack was not uncomfortable or too hot."  (Dkt. No. 39-5 ¶¶ 16-17.)

Plaintiff testified at his deposition that the pack:

> was hot.  It was a little sore, but the pain that I felt . . . it was like a good pain to me.  It's like, I don't know if I can - - it was like my back was bothering me.  I had a hot pack applied on it.  So it was discomfort, but I was enjoying the hot pack on my back.  So I didn't - - and it's funny because I was also making fun of the other guys, like calling them wussy, you know, messing around with them when they were saying it was too hot, and my back was being burned and I didn't know.

---

[4]     Inmates Poochie, Burnside, and Fitzgerald.  (Dkt. No. 39-4 at 36:5-37:9.)

(Dkt. No. 39-4 at 39:3-15.)  At the time, Plaintiff did not feel that the hot pack was burning his skin.  *Id*. at 41:20-25.)

Plaintiff testified at his deposition that the hot pack was on his back for about a half hour. *Id*. at 33:21-23.  In his opposition to the motion for summary judgment, he declares that the pack was on his back for between forty minutes and one hour.  (Dkt. No. 41 at 21.[5])  Inmates Burnside and Fitzgerald, who received treatment from Defendant Ahmed with Plaintiff, declare that their hot pack treatments lasted between forty-five minutes and one hour.  *Id*. at 25-26.  Defendant Ahmed declares that the pack was on Plaintiff's back for approximately ten minutes.  (Dkt. No. 39-5 ¶ 14.)  Plaintiff and Inmate Burnside maintain that Defendant Ahmed did not check Plaintiff's back when he removed the hot pack.  (Dkt. No. 39-4 at 35:8-9; Dkt. No. 41 at 21.) Defendant Ahmed declares that he observed Plaintiff's back when he removed the hot pack and that there was no redness and no burn.  (Dkt. No. 39-5 ¶¶ 19-20.)

When Plaintiff got back to his living area, he took a shower.  (Dkt. No. 39-4 at 44:16-21.) He did not notice a burn at that time.  *Id*. at 41:22-23.  When he got undressed for bed, he noticed a clear oil-like stain on the back of his shirt.  *Id*. at 44:23-45:10.  He generally puts baby oil on his back and assumed that the stain was the result of applying too much.  *Id.*

The next day when Plaintiff took off his shirt to shower, he noticed a large yellowish-gray stain on the back of his shirt.  *Id.* at 46:7-12.  He looked at his back in a mirror and noticed "a little chunk of area where it was just raw skin."  *Id*. at 46:17-21.  The burn was in the middle right part of his back where he cannot feel hot or cold.  *Id*. at 47:3-17, 48:7-49:3.  It looked

---

[5]     Page numbers in citations to Plaintiff's opposition refer to the page numbers assigned by the Court's electronic filing system.

blistered and the skin was gone.  *Id*. at 50:5-19.  The burn was round and about the size "of a palm of a hand."  *Id*. at 51:10-13, 52:6-9.

Plaintiff immediately reported the burn to a correction officer.  *Id*. at 57:3-58:14.  The officer called the medical department, but they could not see Plaintiff right away.  *Id*. at 58:18-25.  Plaintiff got to the medical department at about 7:00 p.m.  *Id*. at 59:3-10.  A member of the medical staff cleaned the burn and put a bandage on it.  *Id*. at 59:11-20.

On February 17, 18, and 19, 2007, Registered Nurse L. Barringer treated the burn on Plaintiff's back by applying clean dressings, saline solution, and ointment to the wound.  (Dkt. No. 1 at 7 ¶ 9; Dkt. No. 39-4 at 60:2-14.)

On February 19, 2007, a security sergeant came to see Plaintiff.  (Dkt. No. 39-4 at 66:8-14.)  Plaintiff asked the sergeant to take a picture of the wound, but he said he would need to talk to someone in the medical department first.  *Id*. at 68:2-5.  After the sergeant talked to the medical department, he told Plaintiff that Defendant Nurse Administrator Catherine Wells wanted to see Plaintiff's wound.  *Id*. at 68:5-8.

At his deposition, Plaintiff testified that when he went to the medical department, Defendant Wells, Nurse Barringer, and Nurse Vogel were waiting.  *Id*. at 68:11-15.  Plaintiff asked Nurse Barringer if he could have a photograph of his back.  *Id*. at 68:25-69:2.  Defendant Wells looked at Plaintiff's wound.  *Id*. at 68:17-19.  In his verified complaint, Plaintiff alleges that when Defendant Wells saw the burn she said, "Oh no, not again.  This is the second time Physical Therapist Ahmed severely burned a patient."  (Dkt. No. 1 at 7 ¶ 10.)  Plaintiff asked Defendant Wells to take a picture of the burn but she refused, stating that "we don't need this on

the record."[6]  *Id*.  Thereafter, the three nurses left the room and talked so that Plaintiff could not hear.  (Dkt. No. 39-4 at 68:17-24.)  Nurse Barringer returned and told Plaintiff that he did not need a photograph taken of his back.  *Id*. at 69:6-7.)  No photographs were ever taken of Plaintiff's back.  *Id*. at 69:8-15.

On February 20, 2007, Plaintiff went to the medical department to have blood drawn.  *Id*. at 71:22-24.  The phlebotomist coughed on Plaintiff and he could feel the spit hit his forehead. *Id*. at 71:24-72:6.  When Plaintiff asked her to cover her mouth, she told him to leave the room. *Id*. at 72:7-11.  Plaintiff did.  *Id*. at 72:10-13.  A misbehavior report was issued charging Plaintiff with attempted assault, verbal harassment, and disobeying a direct order.  *Id*. at 71:16-22, 73:9-13.  Plaintiff believes that Defendant Wells directed a correction officer to write the report.  *Id*. at 76:16-24.  Plaintiff was found guilty of verbal harassment and disobeying a direct order, but not of attempted assault.  *Id*. at 73:14-19.  Plaintiff was sentenced to twenty days in keeplock.  *Id*. at 74:9-13.

On February 21, 2007, Plaintiff filed a grievance that mentioned Defendant Wells by name.  (Dkt. No. 41 at 28-29.)  Plaintiff alleged that he was forced to have physical therapy against his wishes, that he had been burned when a physical therapist applied a heating pad to his back, that Defendant Wells refused to have photographs taken of Plaintiff's burn, and that "Nurses Wells, Baringer, and Roebuck are attempting to cover themselves and the therapist by not taking a picture of the sore and suggesting that another inmate did me harm."  *Id*.  The grievance did not mention Defendant Ahmed's name, referring to him only as "the physical therapist."  *Id*. at 28.  A stamp in the upper right-hand corner of the grievance form shows that it

---

[6]  Plaintiff did not testify as to either of these statements at his deposition.

was received on February 21, 2007.  *Id.*

On February 22, 2007, Plaintiff went to the infirmary at about 1:00 p.m.  (Dkt. No. 39-4 at 61:5-14.)  Defendant Ahmed was there with a doctor, a correction officer, and a dressing nurse.  *Id.* at 61:15-23.  Plaintiff lifted up his shirt so that Defendant Ahmed could see the burn, "but before the actual bandage was taken off my back, there was a whole bunch of people coming into the room that didn't have no business being in the room."  *Id.* at 62:6-63:3.  Plaintiff felt that it was an invasion of his privacy for that many people to be in the room and refused to have his bandage removed.  *Id.* at 79:15-23.  As a result, Defendant Ahmed saw only the bandage over the wound, not the wound itself.  *Id.* at 63:12-14.  Defendant Ahmed asked Plaintiff when he noticed the wound and Plaintiff replied that he noticed it the day after his physical therapy appointment.  *Id.* at 63:17-20.

Defendant Ahmed declares that the "area that was bandaged on [P]laintiff's back was not the area of his back to which I had applied the hot pack on February 15 . . . Accordingly, the burn on [P]laintiff's back could not have been caused by the hot pack that I applied on February 15." (Dkt. No. 39-5 ¶¶ 26-27.)

After that appointment, Nurse Childress completed a form stating that Plaintiff had refused treatment.  It stated that "[b]y refusing treatments you may get an infection which may worsen and cause a systemic infection or worse [you] may die."  (Dkt. No. 41 at 31.)

On February 22, 2007, Defendant Wells wrote a misbehavior report charging Plaintiff with self mutilation and making a false statement.  (Dkt. No. 39-6 at 7.)  Plaintiff was served with a copy of the report on February 23, 2007, at 3:40 p.m.  *Id.* at 10.

The disciplinary hearing regarding Defendant Wells' misbehavior report began on

8

February 26, 2007.  (Dkt. No. 39-6 at 10-11.)  Defendant Lieutenant Greg Palen conducted the

hearing.[7]  (Dkt. No. 39-7 ¶ 8; Dkt. No. 39-6 at 10.)  Plaintiff pleaded not guilty.  (Dkt. No. 39-6

at 11.)  Plaintiff testified, giving the same version of the facts that he asserts in this litigation.  *Id*.

at 12-16.  Plaintiff made his grievance against Defendant Wells part of the hearing record.  (Dkt.

No. 39-7 ¶ 15.)  Plaintiff requested two witnesses: Defendant Ahmed and Inmate Burnside.  (Dkt.

No. 39-6 at 13-14.)  Inmate Burnside testified that Defendant Ahmed did not check Plaintiff's

back when he removed the hot pack on February 15, 2007, but rather "just took the pack off and .

. . pulled his shirt down."[8]  *Id*. at 17.  Defendant Ahmed testified by telephone.  *Id*. at 18.

Defendant Ahmed testified that he had looked at Plaintiff's back after he removed the hot pack

on February 15, 2007.  *Id*. at 19-20.  He testified that when he observed Plaintiff on February 22

he saw that the burn was in a different spot than the hot pack had been.  *Id*. at 20.  After

Defendant Ahmed testified and hung up the phone, Plaintiff produced a dirty t-shirt that showed

the location of his burn.  *Id*. at 22.  Plaintiff asked why no pictures had been taken of his burn.

*Id*. at 22.  Defendant Palen said that he did not know.  *Id*. at 23.  Defendant Palen asked Plaintiff

if he had burned his own back.  *Id*. at 24-25.  Plaintiff said he had not.  *Id*. at 25.

Defendant Palen found Plaintiff guilty of both charges in the February 22 misbehavior

---

[7]     The complaint lists Defendant Palen as a defendant (Dkt. No. 1 at 3), but does not
include any allegations about him or any description of the disciplinary hearing.  The facts
regarding Defendant Palen's role as hearing officer are taken entirely from the evidence that
Defendants submitted in support of their motion for summary judgment.

[8]     When Plaintiff stated in his closing comments that Inmate Burnside had been
"standing right there" on the day of the incident and had seen that Defendant Ahmed did not
check Plaintiff's back, Defendant Palen characterized Inmate Burnside's testimony as: "he said
he didn't observe."  (Dkt. No. 39-6 at 26.)

report.  *Id*. at 28.  His written disposition stated that he relied on:

> R.N. Wells' written report indicating [that Plaintiff] falsely reported
> he had incurred a burn on his back as a result of treatment which
> included a heating pack being placed on his back by [Defendant]
> Ahmed on February 15, 2007.  R.N. Wells' report also indicated that
> following an examination of [Plaintiff] both Dr. Genovese and
> [Defendant] Ahmed feel the burn on [Plaintiff]'s back was self
> inflicted and not the result of [p]hysical [t]herapy treatment . . .
> [Defendant] Ahmed's testimony that following the removal of the
> hearing pack from [Plaintiff]'s back during treatment on February 15,
> 2007, he did check the area of [Plaintiff]'s back where the heating
> pack was applied and did not observe any injury and on 2/22/07
> during an examination of [Plaintiff] observed that the area of the burn
> located on [Plaintiff]'s back was not the same area he treated with the
> heat pack.  Also [Plaintiff]'s testimony that he did not realize he was
> injured for . . . 24 hour[s] . . . following his physical therapy treatment
> and that no other person other than the physical therapist could have
> inflicted the burn.  Also that he could physically reach the area of the
> injury and has no other viable explanation of . . . how the injury
> occurred that would rule out self injury.

*Id*. at  33.  Defendant Palen sentenced Plaintiff to thirty days in keeplock and loss of privileges.

*Id*. at 28.

Defendant John Maly is the Deputy Superintendent of Security at Shawangunk.  (Dkt.

No. 39-6 ¶ 4.)  As the Superintendent's designee, he reviewed Plaintiff's appeal of Defendant

Palen's decision.  *Id*. ¶ 25.  He found that Plaintiff had received written notice of the charges

against him, that Plaintiff was afforded the opportunity to appear at the hearing and present

witnesses and evidence, that Defendant Palen provided Plaintiff with a written statement

explaining the decision and the reasons for the decision, and that the decision was based on

"some evidence."  *Id*. ¶¶ 26, 28.  Specifically, Defendant Maly found that the misbehavior report

and Defendant Ahmed's testimony supported Defendant Palen's conclusion that Plaintiff made

false statements and burned his own back.  *Id*. ¶ 29.  Defendant Maly thus affirmed Defendant

10

Palen's decision.  (Dkt. No. 39-4 at 80:10-16.)

On March 13, 2007, Plaintiff filed a grievance against Defendant Wells, Defendant Ahmed, Lab Tech Cannella, and Kay Knott alleging that they falsified records, harassed him, engaged in unprofessional conduct and unethical medical treatment, subjected him to cruel and unusual punishment, and engaged in a cover up.  (Burgos Transcript at 6-7.)

In late February or early March 2007, Defendant Wells "became aware of confidential information confirming that [P]laintiff had burned his own back."  (Dkt. No. 39-8 ¶ 15.)  On March 12, 2007, a sergeant wrote to Defendant Maly summarizing the informant's allegations. (Meier Memo.)  The informant said that Inmate Burgos altered his hot pot so that it would boil, placed a rag in the boiling water, removed the rag, placed it in plastic, and applied it to Plaintiff's bare back.  *Id*.  After receiving this report, the sergeant ordered a search of Inmate Burgos' cell. *Id*.  An altered hot pot was confiscated in the search.  *Id*.  The sergeant issued a misbehavior report charging Inmate Burgos with inflicting bodily harm on another inmate, action detrimental to the order of the facility, and accessory to self-mutilation.  *Id*.

The disciplinary hearing for Inmate Burgos was held on March 27, 2007.  (Burgos Transcript at 1.)  Plaintiff asserts that he attended the hearing but was prevented from testifying. (Dkt. No. 41 at 7.)  The sergeant testified regarding the information he had learned from the confidential informant and the cell search.  Burgos Transcript at 1-4.  The sergeant noted that the confidential informant stated that Inmate Burgos burned Plaintiff during a cell cleanup and that there was a cell cleanup on February 18.  *Id*. at 4-5.  The hearing officer noted that Plaintiff was "seen by the physical therapist who indicate[d] there [was] no injury" on February 15.  *Id*. at 6. Based on that information, the hearing officer and the sergeant concluded that it "would put it in

the right time frame" if Inmate Burgos burned Plaintiff on February 18 and Plaintiff sought

pictures of his back on February 19.  *Id*. at 7.  The sergeant testified that other than the

confidential informant's statement, he had no "other information, documents, material,

statements, investigative reports, observations, [or] anything like that" to support the charges

against Inmate Burgos.  *Id*. at 6.  The confidential informant then testified that he saw Plaintiff go

into Inmate Burgos' cell on February 11 and 15 so that Inmate Burgos could burn him using the

altered hot pot.  *Id*. at 8-9.  The informant testified that on February 11, Inmate Burgos showed

Plaintiff how to put the rag in the hot pot and then put it in a plastic bag and told him to put it on

his back the day after physical therapy.  *Id*. at 10.  He applied the rag to Plaintiff for a while to

"get the skin softened up."  *Id*. at 11.  Either right before or right after the physical therapy

appointment, the confidential informant heard Inmate Burgos instructing Plaintiff again.  *Id*. at

10-11.  The confidential informant testified that he heard Inmate Burgos and Plaintiff planning to

blame the physical therapist for burning Plaintiff so that Plaintiff could sue the therapist.  *Id*. at

12.

Inmate Bergos was found not guilty of burning Plaintiff's back.  (Dkt. No. 39-4 at 97:20-

23.)

Plaintiff filed this action on March 23, 2009.  (Dkt. No. 1.)  Plaintiff claims that

Defendant Ahmed violated his Eighth Amendment rights, that Defendant Wells violated

Plaintiff's First Amendment rights by retaliating against him, and that Defendant Maly violated

his right to due process.  (Dkt. No. 1 at 8-9 ¶¶ 17-20.)  As noted above, the complaint does not

include any allegations regarding Defendant Palen other than listing him in the caption.  Plaintiff

seeks compensatory damages.  (Dkt. No. 1 at 10.)

III.    **APPLICABLE LEGAL STANDARDS**

   A.    **Legal Standard Governing Motions for Summary Judgment**

   Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The party moving for summary

judgment bears the initial burden of showing, through the production of admissible evidence, that

no genuine issue of material fact exists.   *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir.

2006).   Only after the moving party has met this burden is the nonmoving party required to

produce evidence demonstrating that genuine issues of material fact exist.   *Salahuddin*, 467 F.3d

at 272-73.   The nonmoving party must do more than "rest upon the mere allegations . . . of the

[plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material

facts."   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).   Rather,

a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).   In determining whether a genuine issue of material[9] fact exists, the Court must resolve

all ambiguities and draw all reasonable inferences against the moving party.   *Major League

Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).

   B.    **Legal Standard Governing Motion to Dismiss for Failure to State a Claim**

   To the extent that a defendant's motion for summary judgment under Federal Rule of

Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion

---

   [9]    A fact is "material" only if it would have some effect on the outcome of the suit.
*Anderson*, 477 U.S. at 248.

is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."  *Schwartz v. Compagnise Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) (citations omitted); *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").  Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted.  In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief."  *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

## IV.   ANALYSIS

### A.   Eighth Amendment Claim Against Defendant Ahmed

Plaintiff alleges that Defendant Ahmed violated his Eighth Amendment rights. (Dkt. No. 1 at 8 ¶ 17.) Defendants argue that the claim should be dismissed because Plaintiff did not suffer a serious injury and because Defendant Ahmed did not act with a sufficiently culpable state of mind. (Dkt. No. 39-3 at 6-9.[10]) Defendants are correct.

The Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care. *Farmer*, 511 U.S. at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). There are two elements to a prisoner's claim that prison officials violated his Eighth Amendment right to receive adequate medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72

---

[10]     Page numbers in citations to Defendants' Memorandum of Law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

(2d Cir. 2009) (citation and punctuation omitted).  "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

Defendants argue that Plaintiff cannot establish the objective prong of his Eighth Amendment claim against Defendant Ahmed because the burn was not a sufficiently serious medical condition to warrant Eighth Amendment protection.  (Dkt. No. 39-3 at 7-8.)  Defendants rely on *Cole v. Fischer*, No. 08CV512, 2009 U.S. Dist. LEXIS 85683, 2009 WL 3734343 (W.D.N.Y. Nov. 4, 2009).[11]  Defendants are correct.

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698*,* 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain.  *Chance*, 143 F.3d at 702-03.

In *Cole*, the court found that the second-degree burn a prisoner suffered when a nurse applied a makeshift heating pad to his back was not sufficiently serious to raise constitutional

---

[11]     Defendants served a copy of this unpublished decision on Plaintiff with their moving papers.  (Dkt. No. 39-4 at 121-126.)

concerns.  *Cole*, 2009 WL 3734343, at *3-4.  *See also Pressley v. Green*, No. 02 Civ. 5261, 2004 U.S. Dist. LEXIS 25632, 2004 WL 2978279 (S.D.N.Y. Dec. 21, 2004) (delay of several hours in treating prisoner's first and second degree burns was not serious because there was insufficient evidence that the prisoner had been in severe pain).[12]  There is no evidence here that the burn on Plaintiff's back significantly affected his daily activities or caused him chronic and substantial pain.  Plaintiff states that he still has a scar from the burn and that when he leans back on the wound while sitting in his wheelchair it creates a painful pressure on the entire scarred area. (Dkt. No. 39-4 at 60:15-61:4, 87:2-13.)  However, this is not the type of urgent condition or extreme pain protected by the Eighth Amendment.  Nurse Childress' warning that "[b]y refusing treatments you *may* get an infection which *may* worsen and cause a systemic infection" (Dkt. No. 41 at 31, emphasis added) does not suggest otherwise.  The warning referred to possible outcomes if Plaintiff continued to refuse to allow staff to change his bandage, not to the seriousness of the initial injury.  Therefore, I find that Plaintiff cannot establish the objective prong of his Eighth Amendment claim against Defendant Ahmed.

Even if one assumes that the burn was sufficiently serious to satisfy the objective prong of Plaintiff's Eighth Amendment claim against Defendant Ahmed, Plaintiff has not raised a triable issue of fact as to the subjective prong.  Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d, 698, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  An "inadvertent failure to

---

[12]     The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

provide adequate medical care" does not constitute "deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).  Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.")

Here, although a reasonable juror could conclude that Defendant Ahmed was negligent, there is no evidence from which a reasonable juror could conclude that Defendant Ahmed acted with deliberate indifference.  Defendant Ahmed declares that he has never "attempted to intentionally injure [P]laintiff or any other patient."  (Dkt. No. 39-5 ¶ 28.)  He further declares that he has never "act[ed] or fail[ed] to act for the purpose of causing [P]laintiff harm" and that he never "act[ed] or fail[ed] to act with knowledge that my actions or omissions would result in harm to [P]laintiff."  *Id.* ¶¶ 29-30.  Plaintiff admits that Defendant Ahmed did not intend to harm him.  Plaintiff testified at his deposition that there "was a time when I believed [Defendant Ahmed] did it on purpose, but I would say it was an accident."  (Dkt. No. 39-4 at 54:23-55:2.) He further testified that "I don't believe he actually did it deliberately . . . I think it was more negligent where he wasn't paying attention enough."  *Id.* at 89:12-17.

In his opposition to the motion for summary judgment, Plaintiff notes that Defendant Ahmed previously burned an inmate at Clinton Correctional Facility with a hot pack.  (Dkt. No. 41 at 23.)  Indeed, in interrogatory responses, Defendant Ahmed admitted that "[i]n October or November 2004, inmate claimant John Farrar filed a claim . . . in the New York State Court of Claims . . . In that case, the claimant alleged that, during a physical therapy session at Clinton

18

Correctional Facility, I applied a heating pad to his left shoulder which ultimately burned and blistered his left shoulder." (Dkt. No. 30 at 11.) After a court trial, the court found Defendant Ahmed liable for medical negligence under a *res ipsa loquitur* theory and awarded Mr. Farrar damages of $1,750.00. *Farrar v. New York*, No. 2008-041-513, Claim No. 110074, Motion No. M-75280 (N.Y. Ct. Cl. Sept. 5, 2008). Plaintiff argues that Defendant Ahmed thus should have known to be more careful when treating Plaintiff. (Dkt. No. 41 at 23.) This fact suggests medical negligence, at the most. Therefore, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim against Defendant Ahmed.

**B.     Claims Against Defendant Wells**

Construed broadly, Plaintiff's complaint asserts three claims against Defendant Wells: (1) retaliation; (2) denial of due process; and (3) cruel and unusual punishment in violation of the Eighth Amendment. I will address each of these theories.

1.     <u>Retaliation</u>

Plaintiff claims that Defendant Wells filed a false misbehavior report against him "in retaliation for the grievance complaint filed against [Defendant Ahmed][13] for subjecting [Plaintiff] to severe burns, pains, and scarring" and "[i]n an attempt to cover up the injury inflicted" by Defendant Ahmed. (Dkt. No. 1 at 7 ¶ 11, 8 ¶ 18.) Defendants move for summary judgment of this claim. (Dkt. No. 39-3 at 9-12.)

"An allegation that a prison official filed false disciplinary charges in retaliation for the

---

[13]     Plaintiff apparently refers to his February 21, 2007, grievance. As discussed above, that grievance complained of the burn caused by "the physical therapist" but did not mention Defendant Ahmed by name. (Dkt. No. 41 at 28-29.) The grievance did, however, mention Defendant Wells by name. *Id*.

exercise of a constitutionally protected right ... states a claim under § 1983." Courts must,

however, scrutinize retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d

10, 13 (2d Cir. 1983). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult
> to dispose of on the pleadings because they involve questions of intent
> and are therefore easily fabricated. Second, prisoners' claims of
> retaliation pose a substantial risk of unwarranted judicial intrusion into
> matters of general prison administration. This is so because virtually any
> adverse action taken against a prisoner by a prison official--even those
> otherwise not rising to the level of a constitutional violation--can be
> characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other*

*grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove by the

preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the

defendant took "adverse action" against the plaintiff–namely, action that would deter a similarly

situated individual of ordinary firmness from exercising his or her constitutional rights; and (3)

there was a causal connection between the protected speech and the adverse action--in other

words, that the protected conduct was a "substantial or motivating factor" in the defendant's

decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v.*

*Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489,

492 (2d. Cir. 2001)).

Defendants argue that Plaintiff "cannot demonstrate the first essential element of a First

Amendment retaliation claim" because Plaintiff "has no constitutional right to access an

institutional grievance system or to be free from a false misbehavior report." (Dkt. No. 39-3 at

11.) Defendants cite *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). That case involves

procedural due process and does not apply to retaliation claims.  *Franco v. Kelly*, 854 F.2d 584,

590 (2d Cir. 1988) ("Although our decision in *Freeman* accords prison officials wide latitude in

disciplining inmates as long as minimum constitutional procedures are employed, that latitude

does not encompass conduct that infringes on an inmate's substantive constitutional rights" such

as the prisoner's First Amendment rights of access to the courts and to petition for redress of

grievances) (citations omitted).  In the retaliation context, the filing of a grievance against prison

officials is constitutionally protected conduct.  *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir.

2003);  *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996).  Here, Plaintiff filed a grievance

against Defendant Wells.   (Dkt. No. 41 at 28-29.)  Therefore, Plaintiff has established the first

element of his retaliation claim against Defendant Wells.[14]

Regarding the second element, the Second Circuit defines "'adverse action' *objectively,*

as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from

exercising ... constitutional rights.'"  *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir.

2004)(quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superceded by* 320 F.3d 346,

2003 WL 360053 (2d Cir. Feb. 10, 2003)) (emphasis in original).  The filing of a misbehavior

report is an adverse action.  *Id*. at 384.  Here, Defendant Wells filed a misbehavior report that

resulted in Plaintiff being sentenced to disciplinary keeplock.  Therefore, Plaintiff has established

the second element of his retaliation claim against Defendant Wells.

The question then is whether there is a triable issue of material fact that Plaintiff's

---

[14]      Any claim that Defendant Wells retaliated against Plaintiff by directing an officer
to issue a misbehavior report after the incident with the phlebotomist fails because Plaintiff did
not file his grievance naming Defendant Wells until the day after the officer issued the report.
He was thus not engaged in any protected conduct until *after* that alleged adverse action.

grievance was a substantial or motivating factor in Defendant Wells' decision to write a misbehavior report charging Plaintiff with self-mutilation and lying.  Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions.  *Baskerville v. Blot*, 224 F.Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  Those factors include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation.  *Id.* (citing *Colon*, 58 F.3d at 872-73).  "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action."  *Id.*

Regarding temporal proximity, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citations omitted).  No bright line test has been drawn "'to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.'"  *Id.* (quoting *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001)).  The Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection.  *Id.* (citing *Gorman-Bakos*, 252 F.3d at 555 (suggesting the lapse of five months between protected activity and retaliation may show a causal connection).  Here, Defendant Wells wrote the misbehavior report charging Plaintiff with burning his own back one day after he filed a grievance that mentioned her by name.  (Dkt. No 39-6 at 7; Dkt. No. 41 at 28-29.)  Thus, this factor suggests the existence of a causal connection

between Plaintiff's conduct and the adverse action.

The parties have not referenced, and the Court has not found through an independent review, any evidence in the record regarding Plaintiff's prior disciplinary record. Thus, this factor neither weighs in favor of nor against the existence of a causal connection between Plaintiff's conduct and the adverse action.

Regarding the third factor, vindication of the inmate after a hearing may constitute circumstantial evidence of a defendant's retaliatory motive. *Gayle*, 313 F.3d at 683 ("A false reason for the report's issuance would support the inference that the real reason was the improper one: retaliation."). Here, Plaintiff was not vindicated at the disciplinary hearing. Rather, he was found guilty. (Dkt. No. 39-6 at 28.) Thus, this factor does not suggest the existence of a retaliatory motive for Defendant Wells' actions.

The fourth factor involves analyzing any statements by the defendant concerning his or her motivation. The verified complaint alleges that three days before she filed the misbehavior report, Defendant Wells stated "we don't need this on the record" when Plaintiff asked her to take pictures of the burn. (Dkt. No. 1 at 7 ¶ 10.) Construing this allegation very liberally and drawing all inferences in favor of Plaintiff as the non-moving party, this evidence could be viewed as a veiled threat to take adverse action if Plaintiff attempted to create a record regarding his claims against Defendant Ahmed. Thus, construed very broadly, this factor suggests the existence of a retaliatory motive for Defendant Wells' actions.

In sum, one of the four factors a court must weigh to determine whether there was a causal connection between Plaintiff's protected activity and Defendant Wells' actions strongly suggests that there was such a connection. One factor, if broadly construed, slightly

suggests a causal connection.  One of the factors weighs against the existence of a causal connection.  Finally, one factor is inconclusive.  Affording Plaintiff the special solicitude to which he is entitled as an unrepresented *pro se* litigant, I find that he has raised a triable issue of fact that he was engaged in protected activity when Defendant Wells took adverse action against him and that there was a causal connection between his activity and Defendant Wells' adverse action.

This conclusion does not, however, end the analysis.  Even where an inmate plaintiff meets his burden under this three-pronged test, a defendant is entitled to summary judgment if he or she can demonstrate that he or she would have taken the same action against the plaintiff absent any retaliatory motivation.  *See Gayle*, 313 F.3d at 682.  Courts employ a "'presumption that a prison official's acts to maintain order are done for a proper purpose.' "  *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998) (quoting *Rivera v. Senkowski*, 62 F.3d 80, 86 (2d Cir.1995)), cert. denied, 525 U.S. 907 (1998).  Thus, "'[t]he conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage.' "  *Hynes*, 143 F.3d at 657 (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir.1994)).  "At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail."  *Davidson v. Chestnut*, 193 F.3d 144, 149 (2d Cir. 1999) (per curiam).  Often defendants accused of filing false misbehavior reports meet their burden by showing that "there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report."  *Gayle*, 313 F.3d at 682.

24

Here, Defendant Wells declares that she wrote the misbehavior report because:

> during an investigation into [P]laintiff's allegations concerning the burn, I determined that [P]laintiff had burned his own back. [That] conclusion was based on, among other things, my personal observation of the burn on [P]laintiff's back. When I saw the burn, I noticed the shape of the burn was not consistent with the hot pack utlized by [Defendant Ahmed]. In addition to my own observation of the burn, [D]efendant Ahmed determined that the burn was in a different location than where he had provided hot pack treatment. Further, Dr. Genovese concurred that [P]laintiff had burned his own back because of the unusual position of the burn and the fact that the burn's shape was not consistent with the hot pack.

(Dkt. No. 39-8 ¶¶ 10-14, citations omitted.)

Defendant Wells' explanation appears reasonable and credible on its face. But "it is not enough that [the defendants] allege that the allegedly retaliatory actions *could* have been taken absent a retaliatory animus . . . Rather, the defendants must establish that the actions *would* have been taken, even absent impermissible motives. The fact that two charges were affirmed at the misbehavior hearing does not, standing alone, entitle the defendants to summary judgment . . . [T]he parties have presented sharply contrasting accounts of the events . . . , either of which could be accepted as true by reasonable jurors." *Davis v. Rhoomes*, No. 07 Civ. 6592, 2010 U.S. Dist. LEXIS 103579, at *21, 2010 WL 3825728, at *7 (S.D.N.Y. Sept. 10, 2010) (emphasis in original, citations omitted).[15] Plaintiff continues to hotly dispute that he burned himself or lied about it as charged by Defendant Wells. His story that Defendant Ahmed burned him has remained remarkably consistent from February 2007 to the present. Such questions of "credibility and weight of the evidence . . . are matters for the jury." *Graham v. Henderson*, 89 F.3d 75, 81 (2d Cir. 1996). The present case is thus

---

[15] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

distinguishable from cases where the plaintiff himself admitted to committing some of the charged misconduct or the undisputed facts showed that the plaintiff violated a prison policy. *See Miller v. Loughren*, 258 F. Supp. 2d 61 (N.D.N.Y. 2003) (granting summary judgment to the defendant on the basis of the plaintiff's admission in letter to the defendant that his misconduct was sufficient to justify his housing reassignment.); *Battice v. Phillip*, No. CV-04-669, 2006 U.S. Dist. LEXIS 53407, 2006 WL 2190565 (E.D.N.Y. Aug. 2, 2006) (granting summary judgment to the defendant because the plaintiff admitted violating prison policy by storing contraband in his cell); *Pilgrim v. Artus*, No. 9:07-CV-1001, 2010 U.S. Dist. LEXIS 97978, 2010 WL 3724883 (N.D.N.Y. Mar. 18, 2010) (granting summary judgment to the defendant because the plaintiff would have been disciplined for wearing dreadlocks in violation of DOCCS policy regardless of allegedly retaliatory motive).[16] Therefore, I recommend that the Court deny Defendants' motion for summary judgment of Plaintiff's retaliation claim against Defendant Wells.

    2.    <u>Due Process</u>

At his deposition, Plaintiff classified his allegations against Defendant Wells as a due process claim. (Dkt. No. 39-4 at 88:9-12.) Defendants argue that this claim should be dismissed because Plaintiff received all of the process to which he was due. (Dkt. No. 39-3 at 11 n.1.) Defendants are correct.

In the procedural due process context, the Second Circuit has held that while a prisoner "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," he *does* have "the right not to be

---

[16]    The Court will provide Plaintiff with a copy of these unpublished decisions in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

deprived of a protected liberty interest without due process of law." *Freeman*, 808 F.2d at 951. Where a prisoner is falsely accused of violating disciplinary rules, and a hearing is held on the allegedly false charges that comports with the procedural due process standards set forth by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and any resulting guilty finding is based on "some evidence," the correctional officer's filing of unfounded charges does not give rise to procedural due process liability. *Freeman*, 808 F.2d at 953-54.   As discussed below in Section IV (C), Plaintiff received all of the due process required by *Wolff*.   Therefore, I recommend that the Court dismiss Plaintiff's due process claim against Defendant Wells.

3.    <u>Eighth Amendment</u>

At his deposition, Plaintiff stated that Defendant Wells inflicted cruel and unusual punishment on him because he was deprived of his ability to go to programs and socialize when he was placed in keeplock.  (Dkt. No. 39-4 at 90:5-21.)  Defendants have not addressed Plaintiff's Eighth Amendment claim against Defendant Wells.

To prove the objective component of an Eighth Amendment conditions of confinement claim, a prisoner must show that the defendant's "act or omission ... result[ed] in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834.  Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Here, Plaintiff has not alleged, and the evidence does not show, that he was denied the minimal civilized measure of life's necessities.  Therefore, I recommend that the Court *sua sponte* dismiss Plaintiff's Eighth Amendment claim against Defendant Wells for failure to state a claim.  28 U.S.C. § 1915(e)(2).

27

**C.     Claim Against Defendant Palen**

As discussed above, the complaint names Defendant Palen as a defendant but does not

include any allegations against him.  (Dkt. No. 1. ) The evidence submitted in support of

Defendants' motion for summary judgment shows that Defendant Palen conducted the

disciplinary hearing regarding Defendant Wells' misbehavior report.  (Dkt. No. 39-6 at 10-30;

Dkt. No. 39-7.)  Although Defendants argue that Defendant Palen should be dismissed due to

Plaintiff's failure to allege any facts about him (Dkt. No. 39-3 at 17-18), they also make

arguments on the merits of the disciplinary hearing.  *Id.* at 12-17.  Specifically, they argue that

any claim regarding the disciplinary hearing must be dismissed because (1)  Plaintiff was not

deprived of any liberty interest; and (2) Defendant Palen provided Plaintiff with all of the process

he was due.  *Id.*  Although I agree that the complaint on its face fails to state a claim against

Defendant Palen because it does not allege any facts about him, I will address the merits of the

claim.

In order to state a claim for violation of his procedural due process rights, a plaintiff must

allege facts plausibly suggesting that he was deprived of a liberty interest without due process of

law.  *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).  Defendants argue that Plaintiff was not

deprived of a liberty interest.  (Dkt. No. 39-3 at 14.)  Defendants are correct.

Plaintiff was sentenced to thirty days of keeplock confinement in his own cell.  (Dkt. No.

39-6 at 28.)  Courts in the Second Circuit routinely find that no liberty interest is implicated

where an inmate is sentenced to serve an "exceedingly short" disciplinary sentence and there is

no indication that he or she endured any "unusual" conditions.  *Palmer v. Richards*, 364 F.3d 60,

65-66 (2d Cir. 2004); *Cabassa v. Smith*, No. 9:08-CV-0480 (LEK/DEP), 2009 WL 1212495, at

*10 (N.D.N.Y. Apr. 30, 2009) (prisoner's thirty day keeplock sentence did not implicate liberty interest)[17].  Here, Plaintiff's keeplock sentence was of a sufficiently short duration to be considered "exceedingly short" and there is no indication that Plaintiff suffered any unusual conditions.  Therefore, Plaintiff was not deprived of any liberty interest.

Defendants argue that even if Plaintiff was deprived of a liberty interest, he received all of the process to which he was due. (Dkt. No. 39-3 at 14-17.)  Defendants are correct.

Due process is satisfied if an inmate facing disciplinary charges receives (1) advanced written notice of the charges against him; (2) a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; (3) a fair and impartial hearing officer; and (4) a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken.  *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004).[18]  The undisputed evidence shows that Plaintiff received all of the procedural protections required by *Wolff*.

First, Plaintiff received advanced written notice of the charges against him.  Fair notice requires the charging officer "to be sufficiently specific as to the misconduct with which the inmate is charged to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges and not be made to explain away vague charges set out in a misbehavior

---

[17]     Defendants served a copy of this unpublished decision on Plaintiff with their moving papers.  (Dkt. No. 39-4 at 141-158.)

[18]     In some circumstances, such as where the inmate is illiterate or where the complexity of an issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, an inmate may also be entitled to assistance from another inmate or from prison staff in preparing his defense.  *Wolff,* 418 U.S. at 570.  Here, Plaintiff does not argue that he was entitled to an assistant.  (Dkt. No. 39-6 ¶ 27.)

report." *Taylor v. Rodriguez*, 238 F.3d 188, 192-93 (2d Cir. 2001) (punctuation and citation omitted). Here, Plaintiff received a copy of Defendant Wells' misbehavior report on February 23, 2007 - one day after the report was written and three days before the disciplinary hearing began. (Dkt. No. 39-6 at 10.) The misbehavior report was quite specific and informed Plaintiff thoroughly of the charges against him.

Second, Plaintiff was allowed to present documentary evidence and call witnesses. Plaintiff introduced his grievance naming Defendant Wells as documentary evidence. (Dkt. No. 39-7 ¶ 15.) Plaintiff requested two witnesses - Defendant Ahmed and Inmate Burnside. Both testified. (Dkt. No. 39-6 at 13, 16-21.) Although Plaintiff was upset that Defendant Ahmed testified by telephone, he agreed to the procedure. *Id.* at 21. Moreover, the fact that disciplinary hearing testimony is taken over the telephone rather than in person does not implicate any due process right. *Greaves v. New York*, No. 95 Civ. 9725 (SAS), 1997 U.S. Dist. LEXIS 7225, 1997 WL 278109, at *3 (S.D.N.Y. May 22, 1997).[19]

Third, Defendant Palen was a fair and impartial hearing officer. It is well settled "that the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally." *Espinal v. Goord*, 180 F. Supp. 2d 532, 539 (S.D.N.Y.2002) (citing *Francis v.. Coughlin*, 891 F.2d 43, 46 (2d Cir.1989)). Due process in this context requires only that the hearing officer's decision not be "arbitrary." *Wolff*, 418 U.S. at 571. A decision is not "arbitrary" if it is supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). "This standard is extremely tolerant and is satisfied 'if there is *any* evidence in the

---

[19]    The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

record that supports' the disciplinary ruling." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004)

(emphasis in original) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)).

Here, Defendant Palen's decision was supported by Defendant Ahmed's testimony and

Defendant Wells' misbehavior report.

Fourth and finally, Defendant Palen provided Plaintiff with a written statement of the

disposition.  (Dkt. No. 39-6 at 33.)  Therefore, Plaintiff has not raised a triable issue of fact that

he was denied due process.  Accordingly, I recommend that the Court dismiss Plaintiff's due

process claim against Defendant Palen.

> **D.     Claims Against Defendant Maly**

Plaintiff essentially claims that Defendant Maly violated his rights in two ways: (1) by

affirming Defendant Palen's disciplinary disposition despite being aware of Plaintiff's claims

that the charges were the product of retaliation by Defendant Wells; and (2) by being involved in

the investigation of allegations that it was Inmate Burgos who burned Plaintiff's back, a position

that Plaintiff finds inconsistent with Defendant Maly's affirming a disposition that Plaintiff

burned himself.  (Dkt. No. 1 at 7-8 ¶ 13; Dkt. No. 39-4 at 91:14-94:6; Dkt. No. 41 at 6-8.)

Defendants move for summary judgment of Plaintiff's claims against Defendant Maly,

arguing that "inmates do not enjoy a constitutional right to an investigation of any kind by

government officials."  (Dkt. No. 39-3 at 17.)  Defendants are correct.

Regarding Plaintiff's first theory of Defendant Maly's liability, courts have held that

"merely affirming [a] hearing determination is not a sufficient basis to impose liability."

*Woodward v. Mullah*, No. 08-CV-463A, 2009 WL 4730309, at *2-3 (W.D.N.Y. Dec. 7, 2009).[20]
Although the Second Circuit once held that allegations that a superintendent affirmed a prisoner's
conviction on administrative appeal were sufficient to allow the case to survive summary
judgment[21], district courts in this Circuit have often distinguished that case by noting that liability
only attaches if the supervisory official "proactively participated in reviewing the administrative
appeals as opposed to merely rubber-stamping the results." *Woodward,* 2009 WL 4730309, at
*2-3.  Here, Defendant Maly simply affirmed the disciplinary disposition imposed on Plaintiff by
Defendant Palen.  In fact, one of Plaintiff's chief complaints about Defendant Maly is that he
"affirmed Plaintiff's [disciplinary sentence] without any investigation of [P]laintiff's claim."
(Dkt. No. 41 at 13.)  There is no evidence that Defendant Maly "proactively participated."
Therefore, I recommend that the Court reject Plaintiff's first theory.

Regarding Plaintiff's second theory of Defendant Maly's liability, it is difficult to discern
how Plaintiff has standing to challenge the disciplinary investigation regarding Inmate Burgos.
Although Plaintiff's injury was the issue in that case, none of the charges was directed at
Plaintiff.  The claim fails even if construed broadly as a claim that Defendant Maly failed to
thoroughly investigate the incident as a whole because prisoners do not have a due process right
to a thorough investigation of grievances.  *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 341-42
(S.D.N.Y. 2003).  Therefore, I recommend that the Court dismiss the claim against Defendant

---

[20]     The Court will provide Plaintiff with a copy of this unpublished decision in
accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

[21]     *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).  Plaintiff cites *Williams*
in his opposition to the motion for summary judgment.  (Dkt. No. 41 at 12.)

Maly.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' proposed redactions to the Meier Memorandum, the Genovese Memorandum, and the Burgos transcript are accepted. The Clerk is directed to provide Plaintiff with copies of the redacted documents; and it is further

**ORDERED** that Plaintiff's letter motion (Dkt. No. 43) requesting that the Court accept his untimely response to the motion for summary judgment is **GRANTED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Pressley v. Green*, No. 02 Civ. 5261, 2004 U.S. Dist. LEXIS 25632, 2004 WL 2978279 (S.D.N.Y. Dec. 21, 2004); *Greaves v. New York*, No. 95 Civ. 9725 (SAS), 1997 U.S. Dist. LEXIS 7225, 1997 WL 278109 (S.D.N.Y. May 22, 1997); *Woodward v. Mullah*, No. 08-CV-463A, 2009 WL 4730309 (W.D.N.Y. Dec. 7, 2009), *Davis v. Rhoomes*, No. 07 Civ. 6592, 2010 U.S. Dist. LEXIS 103579, 2010 WL 3825728 (S.D.N.Y. Sept. 10, 2010); *Battice v. Phillip*, No. CV-04-669, 2006 U.S. Dist. LEXIS 53407, 2006 WL 2190565 (E.D.N.Y. Aug. 2, 2006); and *Pilgrim v. Artus*, No. 9:07-CV-1001, 2010 U.S. Dist. LEXIS 97978, 2010 WL 3724883 (N.D.N.Y. Mar. 18, 2010) in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009); and it is further

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 39) be **GRANTED IN PART and DENIED IN PART**. I recommend that the Court dismiss all of Plaintiff's claims except the retaliation claim against Defendant Wells.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: August 21, 2011
      Syracuse, New York

George H. Lowe
United States Magistrate Judge